1996 SD 4

Steven B. LINDQUIST, Administrator of the South Dakota Human Services Center, a South Dakota State Facility, Appellee,

v.

Jon E. BISCH, Appellant.

Jon E. BISCH, Appellant,

v.

Steven B. LINDQUIST, Administrator of the South Dakota Human Services Center, a South Dakota State Facility, Appellee.

Nos. 19108, 19109.

Supreme Court of South Dakota.

Argued Nov. 29, 1995.

Decided Jan. 10, 1996.

Michael D. Stevens and Lucy M. Lewno of Blackburn, Stevens & Fox, Yankton, for appellee.

David M. Hosmer, Yankton, for appellant.

MILLER, Chief Justice.

[¶ 1] Jon E. Bisch was involuntarily committed to the South Dakota Human Services Center (Center), a state hospital for the treatment of mental illness. He appeals Circuit Judge Kathleen Caldwell's order denying a writ of habeas corpus and Circuit Judge Arthur Rusch's order to permit Center to involuntarily medicate him. We affirm.

## FACTS

[¶ 2] On May 4, 1994, Bisch was discharged from the Center. Bisch had been receiving treatment there for schizophrenia, paranoid type. At the time of his discharge, he was regularly taking a psychotropic medication, Risperidone, for treatment of his mental illness.

[¶ 3] After his discharge, Bisch lived in a half-way house. In October, 1994, he moved into his own apartment. He then stopped taking the Risperidone, believing it caused adverse side effects, including shakiness and slowed thought processes. Feeling uncomfortable in his home, he began staying at a friend's apartment. Bisch developed fears that Mafia hit men were stalking him and that his life was in danger. He also believed his thoughts were broadcasted in radio transmissions. He refused to leave the apartment due to his fear of being harmed by Mafia members.

[¶ 4] On November 8, 1994, Bisch voluntarily committed himself to the Center. His treating psychiatrist there diagnosed him as having schizophrenia, paranoid type and prescribed Risperidone as part of his treatment plan. Bisch refused to take the medication. On November 22, 1994, the Yankton County Board of Mental Illness (Board) involuntarily committed Bisch to the Center on the grounds he was a danger to himself. Bisch did not appeal the commitment.

[¶ 5] Bisch continued to refuse the medication prescribed by his treating physician at the Center. On December 20, 1994, Bisch filed an application for a writ of habeas corpus in circuit court. Among other allegations, he claimed that he did not pose a danger to himself or others and, therefore, his involuntary commitment was unlawful.

[¶ 6] Two days later, Steven B. Lindquist, administrator of the Center, petitioned the circuit court for authority to involuntarily administer psychotropic medication to Bisch because of his unwillingness to consent to such treatment. Lindquist claimed Bisch was incompetent to make his own decision regarding appropriate treatment. He further claimed that if Bisch did not receive the recommended medication, he presented a danger to himself or others and his condition would not improve and could deteriorate.

[¶ 7] A hearing on the petition to medicate Bisch was held before Judge Rusch on January 10, 1995. Bisch was represented by appointed counsel and continued to oppose the administration of psychotropic drugs. Judge Rusch found that if Bisch were not hospitalized his mental illness would render him unable to provide for his basic needs, such as food, clothing, shelter, health or safety. He further found that Bisch's mental illness prevented him from making competent, voluntary and knowing decisions concerning psychotropic medications. Judge Rusch determined that Bisch's condition would deteriorate rather than improve if psychotropic medication was not administered. Judge Rusch then issued an order granting Center the authority to administer such medication to Bisch.

[¶ 8] On February 7, 1995, Judge Caldwell held a hearing on the application for writ of habeas corpus. At that time, Bisch's attorney indicated that Bisch did not wish to leave the Center. His reason for requesting the writ was to prevent Center from continuing to administer psychotropic medications pursuant to Judge Rusch's earlier order. Bisch again asserted that he did not pose a danger to himself and therefore his involuntary commitment was unlawful.

[¶ 9] Judge Caldwell found Bisch was a danger to himself because he was unable to provide himself with the basic necessities of life. Further concurring in Judge Rusch's finding that Bisch needed psychotropic medication, Judge Caldwell entered an order denying the writ of habeas corpus.

[¶ 10] Bisch appeals Judge Caldwell's denial of the writ of habeas corpus and Judge Rusch's order to medicate him. His sole contention is that he does not pose a danger to himself and, therefore, involuntary commitment and court-ordered administration of psychotropic medication is unwarranted and unlawful.

## DECISION

[¶ 11] Were Judge Caldwell and Judge Rusch clearly erroneous in finding Bisch

poses a danger to himself as defined by SDCL 27A–1–1(5) and SDCL 27A–1–2 so as to justify involuntary commitment and court-ordered administration of psychotropic medications?

[¶ 12] Involuntary commitment of mentally ill persons is governed by statute. At the time of Bisch's commitment, SDCL 27A–10–9.1 stated in relevant part:

[T]he board of mental illness may order the involuntary commitment of the person for an initial period not to exceed ninety days if a majority of the board finds by clear and convincing evidence, supported by written findings of fact and conclusions of law, that:

(1) The person meets the criteria in § 27A–1–2;

(2) The person needs and is likely to benefit from the treatment which is proposed; and

(3) The commitment is to the least restrictive treatment alternative.

If the above findings are not made, the board shall order that the person be released.... If the board orders the involuntary commitment of the person, it shall immediately notify the person and his attorney of his right to appeal pursuant to § 27A–11A–25.[1]

[¶ 13] The criteria set forth in SDCL 27A–1–2 for involuntary commitment are:

(1) The person has a severe mental illness;

(2) Due to the severe mental illness, the person is a danger to self or others; and

(3) The individual needs and is likely to benefit from treatment.

"Danger to self" includes "recent behavior or related physical conditions which show there is a danger of serious personal harm in the very near future as evidenced by an inability to provide for some basic human needs such as food, clothing, shelter, physical health or personal safety[.]" SDCL 27A–1–1(5)(b).

[¶ 14] In filing his application for habeas corpus before Judge Caldwell, Bisch alleged "[t]hat the Yankton County Board of Mental Illness exceeded its statutory authority since the evidence at the mental illness hearing did not meet the requisite standard of proof by clear and convincing evidence pursuant to SDCL 27A–10–9.1, including a danger to self and others." [2] Judge Caldwell upheld Board's commitment decision. She determined Bisch was a danger to himself because he was unable to care for himself and provide for the basic necessities of life. On appeal, Bisch challenges the sufficiency of the evidence to clearly and convincingly establish he was a danger to himself.

[¶ 15] Bisch contends that whether a person is a danger to himself is a mixed question of law and fact subject to de novo review. We disagree. An individual's potential dangerousness is an "essentially factual" inquiry, "founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct.'" *See Permann*

---

1. In 1995, the legislature amended SDCL 27A–10–9.1 to expressly authorize involuntary commitment to the South Dakota Human Services Center, a veteran's administration hospital, or a private facility. 1995 SDSessL ch 159. Gender neutral changes were also made. *Id.*

2. A preliminary question presented by this case is whether habeas corpus is available for reconsideration of Board's determination. Generally, habeas corpus cannot serve as a substitute for an appeal. *Everitt v. Solem*, 412 N.W.2d 119, 121 (S.D.1987) (citing *Goodroad v. Solem*, 406 N.W.2d 141, 143 (S.D.1987)); *Podoll v. Solem*, 408 N.W.2d 759, 760 (S.D.1987). Habeas corpus may not be employed to review mere errors or irregularities in the proceedings of a tribunal having jurisdiction over the person and subject matter. 39 AmJur2d *Habeas Corpus* §§ 12, 30

(1968); *Everitt*, 412 N.W.2d at 121. However, SDCL 27A–12–32.2 expands the scope of habeas corpus review in involuntary commitment cases. This statute provides:

Any person involuntarily committed by a board of mental illness and any person confined or in any manner detained or restrained is entitled to the benefit of the writ of habeas corpus. If the court finds that the criteria in § 27A–10–9.1 are met, the court may authorize continued involuntary commitment. Such authorization is not a bar to the issuing of the writ the second time if it is alleged that the criteria in § 27A–10–9.1 are no longer met. SDCL 27A–12–32.2. Consequently, an individual such as Bisch who is involuntarily committed may receive habeas corpus review to determine whether the requirements for commitment are satisfied.

*v. South Dakota Dep't of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113, 119 (S.D.1987) (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.1984)) (emphasis deleted). Assessing a person's dangerous propensities does not require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles—the hallmarks of an essentially legal inquiry. *See id.* Furthermore, in assessing an individual's dangerous propensities, "the trial court is in the best position to determine the credibility of the testifying witnesses and weigh the evidence." *In re Orr,* 176 Ill. App.3d 498, 125 Ill.Dec. 885, 890, 531 N.E.2d 64, 69 (1988) (superseded by statute on other grounds as stated in *In re Floyd,* 274 Ill. App.3d 855, 211 Ill.Dec. 350, 354–55, 655 N.E.2d 10, 14–15 (1995)). As an appellate court, we are ill-equipped to reevaluate the facts contained in a cold record and determine as a matter of law whether or not a person poses a danger to himself or others.

[¶ 16] We therefore hold that whether a person is a danger to himself or others is a question of fact. *In re Kupperion,* 331 N.W.2d 22, 27 (N.D.1983). Questions of fact are reviewed under the clearly erroneous standard. *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994). "In applying this standard, the question is not whether we would have made the same findings the trial court did; rather, the question is whether, after a review of all the evidence, we are convinced that a mistake has been made." *People in Interest of K.C.,* 414 N.W.2d 616, 620 (S.D.1987) (citations omitted).

[¶ 17] Based on our review of the record, we cannot conclude that Judge Caldwell was clearly erroneous in finding the evidence supporting Bisch's dangerousness was clear and convincing. We have defined "clear and convincing" as follows:

> The measure of proof required by this designation falls somewhere between the rule in ordinarily civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegation sought to be established. Evidence need not be voluminous or undisputed to accomplish this.

*Brown v. Warner,* 78 S.D. 647, 653, 107 N.W.2d 1, 4 (1961).

[¶ 18] The only substantive evidence presented to Judge Caldwell concerning Bisch's condition was the testimony of his treating physician Dr. Michael Stewart and an independent psychiatric evaluation by Dr. David Bean. Dr. Stewart testified that Bisch was unable to care for himself due to his mental illness. He also noted that Bisch had previously left his own home and confined himself to a friend's apartment out of fear of attacks by the Mafia. Bisch also lost weight during this period of self-imposed confinement. Dr. Stewart was strongly concerned that if Bisch was not hospitalized, he would again isolate himself and neglect to eat. Dr. Stewart opined that Bisch's increasing paranoia would cause him to avoid contact with family members who might otherwise insure that he ate properly. Dr. Stewart also noted that Bisch refused to perform simple tasks at the Center, such as walking to the cafeteria for meals, due to his delusional beliefs about the Mafia. This bolstered Dr. Stewart's opinion that Bisch was unable to provide himself with the basic necessities of life. Dr. Stewart further observed a slow, steady decline in Bisch's functioning since his hospitalization, and opined that his condition would continue to deteriorate without medication.

[¶ 19] At Bisch's request, Dr. David Bean conducted an independent psychiatric evaluation of Bisch's condition. Although Dr. Bean opined that Bisch was competent to decide whether to receive psychotropic medication, his evaluation does not refute Dr. Stewart's concerns over Bisch's ability to care for himself. Dr. Bean wrote:

> It does appear that if Mr. Bisch were released from the Human Services Center (which, incidentally he is not seeking) that he may well be subject to the potential of further deterioration of his psychiatric condition, as well as be unable to care for himself.

[¶ 20] Bisch argues that he posed no danger to himself, because his friends or family

142

members would have insured that he ate properly and received other necessities had he been released from the Center. However, Bisch did not appear at the hearing and none of his friends or family members testified regarding his ability to care for himself or their willingness to insure his basic health and safety. Given clear and convincing evidence in the record indicating that Bisch was unable to provide himself with necessities, Judge Caldwell did not clearly err when she found that Bisch posed a danger to himself under SDCL 27A–1–1(5)(b) and 27A–1–2. Because Bisch raises no other claims of error concerning his involuntary commitment, the commitment order must stand.

[¶ 21] Bisch also appeals the "forced medication" order entered by Judge Rusch. However, his challenge rests entirely on the claim that he did not pose a danger to himself and therefore should not have been involuntarily committed. Because we have determined that he was a danger to himself and his commitment was proper, his challenge of the forced medication order must also fail.

[¶ 22] Affirmed.

[¶ 23] AMUNDSON, SABERS, KONENKAMP and GILBERTSON, JJ., concur.