2002 SD 154

**Rosalinda Viannie ANDERSON, Plaintiff and Appellant,**

v.

**Keith ANDERSON, Defendant and Appellee.**

**No. 22319.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 2002.

Decided Dec. 11, 2002.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for appellant.

Dale R. Hansen, Sturgis, South Dakota, Attorney for appellee.

PER CURIAM.

[¶ 1.] Rosalinda Viannie Anderson (Viannie) appeals the property distribution and denial of alimony in her divorce from Keith Anderson (Keith). We affirm.

### FACTS

[¶ 2.] Viannie, a native of the Philippines, and Keith met in that country in 1974. They were married in separate civil and religious ceremonies in Manila in March 1975. At that time, Keith was approximately forty-five years of age and Viannie was twenty-three. This was Vian-

nie's first marriage. Keith was previously married and had four children from that marriage.

[¶ 3.] After their marriage, Keith and Viannie returned to the United States where Keith continued his pursuits as a successful inventor and businessman.[1] Although Viannie had a college accounting degree and some employment experience, she did not work outside the home. The only exception was during some brief intervals when she worked for Keith or one of his businesses.

[¶ 4.] The couple had a relationship characterized by the trial court as tumultuous and stressful. For the most part, Viannie remained in the home caring for the two children born during the marriage. Keith worked hard developing a business that manufactured satellite television receivers. Stress developed in the marriage, and Keith took Viannie to Mexico in 1978 where they obtained a decree of divorce from a Mexican court. Although there was some division of assets by the parties after that proceeding, they remained living together as husband and wife until 1984 when they went through another marriage ceremony.

[¶ 5.] In 1985, Keith sold his business for a substantial sum and the parties' relationship became more harmonious. Keith essentially retired, the couple traveled, and their children wanted for nothing as they reached adulthood. By 1999 the parties' relationship again began to deteriorate. Viannie suspected Keith of having an affair with the tenant of a rental home they owned. Viannie became violently jealous and, by her own admission, attempted to kill herself and Keith. She did so by

grabbing the steering wheel of a car he was driving and she tried to direct it into oncoming traffic. Viannie also initiated other physical confrontations with Keith that led to her arrest for domestic assault. On the other hand, the trial court found that Keith's procurement of the Mexican divorce and treatment of Viannie, "on an emotional level was shoddy, unfeeling and disloyal."

[¶ 6.] Viannie started divorce proceedings against Keith in September 2000, but the couple stipulated to a dismissal in an attempt to work things out. When those efforts failed, Viannie refiled her divorce action in March 2001. Following a trial, the court entered findings of fact, conclusions of law and a decree of divorce dividing the marital assets and denying Viannie's request for alimony. Viannie appeals.

### ISSUE

[¶ 7.] **Did the trial court abuse its discretion in its property division and denial of alimony?**

[¶ 8.] Keith was a successful businessman prior to the marriage. He entered the marriage with property worth $1,229,290[2] while Viannie entered with no significant assets other than those Keith had given her. The parties' Mexican divorce in 1978, their remarriage in 1984, and the sale of Keith's business in 1985 resulted in a practical division of most of the parties' assets. By the time of this divorce, each party held separate property and funds invested in their own name in separate accounts. They owned and managed these assets with little advice or influence by the other.

---

1. It appears the couple lived in Utah for a period of time before eventually returning to South Dakota.

2. Viannie asserts this figure was closer to $248,000, but the figure set forth above is the amount determined by the trial court and Viannie fails to support any argument that the finding is clearly erroneous.

The property held by Keith was worth $987,000 while the property held by Viannie was worth $854,884. It appears to have been largely understood at trial that each party would be awarded this property they already held in their respective names.

[¶ 9.] The property in dispute was some Meade County real estate that included the marital home (valued at $600,000) and some gold Krugerrands (valued at $80,000). Keith argued that the real estate should not be included in the marital estate because he owned the property long before his marriage to Viannie. He also argued that the Krugerrands should not be included because they would be gifted to his children (including his two children by Viannie) on his death. The trial court included the disputed property in the value of the marital estate which was valued at $2,521,884. The trial court then awarded the separately held property to the party holding it. That included cash, bank accounts, brokerage accounts and investment property of $854,844 to Viannie and $987,000 to Keith. The court also awarded the Meade County property and the Krugerrands to Keith. The court finally required Keith to make a cash payment to Viannie in the amount of $60,000.

[¶ 10.] Viannie requested alimony of $300 to $500 per month to purchase health insurance (which Keith had never carried). The trial court denied that request finding that the investment property awarded to Viannie would provide her with sufficient income to obtain insurance. On appeal, Viannie challenges the property division and the denial of alimony.

[¶ 11.] This Court reviews a trial court's division of property and determination of alimony under the abuse of discretion standard. *See Feldhaus v. Schreiner*, 2002 SD 65, ¶ 9, 646 N.W.2d 753, 755; *Christians v. Christians*, 2001

SD 142, ¶ 8, 637 N.W.2d 377, 380; *Billion v. Billion*, 1996 SD 101, ¶ 14, 553 N.W.2d 226, 230. The property division and decision on alimony must be considered together to determine if their combined effect shows an abuse of discretion. *Urban v. Urban*, 1998 SD 29, n. 3, 576 N.W.2d 873, 876. An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Christians*, 2001 SD 142 at ¶ 8, 637 N.W.2d at 380. To obtain a reversal under the abuse of discretion standard, the appellant must show that no judicial mind could have reached the same conclusion in view of the law and circumstances of the case. *Feldhaus*, 2002 SD 65 at ¶ 9, 646 N.W.2d at 755.

[¶ 12.] In making an equitable property division, the trial court must consider the following factors: (1) the duration of the marriage; (2) the value of the property; (3) the age of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. *Roupe v. Roupe*, 1996 SD 25, ¶ 14, 544 N.W.2d 540, 543. "When a party requests ... alimony 'they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of that need.'" *Urban*, 1998 SD 29 at ¶ 7, 576 N.W.2d at 875 (quoting *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D.1991)). Factors considered in determining the need for alimony and its amount and duration are: (1) length of the marriage; (2) respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in the termination of the marriage. *Urban*, 1998 SD 29 at ¶ 8, 576

N.W.2d at 875; *Christians*, 2001 SD 142 at ¶ 16, 637 N.W.2d at 381.

[¶ 13.]   Here, based upon the trial court's findings, we note the following facts relating to these property division and alimony factors.

### Duration of the Marriage

[¶ 14.]   Even if the Mexican divorce was valid, an issue over which there was some dispute at trial, the parties were married for twenty of the last twenty-six years and lived together for the last twenty-six years.   Moreover, they had two children together.   Thus, the parties were "married a significant length of time[.]"

### Value of the Property

[¶ 15.]   The total marital estate was valued at $2,521,884 with property worth $1,607,000 awarded to Keith and property worth $914,884 awarded to Viannie. There were no marital debts beyond normal monthly living expenses.

### Age of the Parties

[¶ 16.]   At the time of the divorce, Keith was seventy-two years of age and Viannie was fifty.

### Health of the Parties

[¶ 17.]   Keith sustained a fall just before the divorce and, at that time, was suffering from the residual effects of the fall, perhaps exacerbated by his age. Viannie suffered from rheumatoid arthritis, a progressive disease.   The future risks and costs of these respective medical conditions were unknown.

### Competency to Earn a Living

[¶ 18.]   Both parties are intelligent and resourceful.   Keith could probably do some consulting work if he desired.   Viannie's lack of work experience and the uncertainty over the progression of her arthritis limits her job opportunities.

### Contribution to Accumulation of Property

[¶ 19.]   Keith entered into the marriage with $1,230,000 in assets including the disputed real property in Meade County now valued at $600,000.   Keith testified that he actually purchased the Meade County property before 1960.   Viannie entered into the marriage with $10,500, $10,000 of which was given to her by Keith before the marriage.   During the marriage, Keith worked hard developing his business while Viannie contributed valuable resources as a wife and mother.   The marital estate is now valued at $2,521,884.

### Income Producing Capacity of Assets

[¶ 20.]   The individual funds held by each party and awarded to them by the trial court generate income dependent upon the portfolio mix, investment decisions and the market.   The Krugerrands awarded to Keith are not an income investment.   The Meade County property awarded to Keith is income producing only to the extent of rental income from a trailer of $450 per month.   However, the trailer home was held in Viannie's name and was awarded to her as part of her property.   At the time of the divorce, Keith wanted the trailer removed from the Meade County property almost immediately.

### Station in Life or Social Standing

[¶ 21.]   The parties' lifestyle has not been particularly extravagant although they have enjoyed traveling extensively. Both parties have sufficient assets to maintain their lifestyle without working another day.   Keith desires to keep his home located on the disputed Meade County property and Viannie wishes to move to California.

### Fault in Termination of the Marriage

[¶ 22.]   Both parties are equally at fault in the termination of the marriage and both were granted a divorce by the trial

court on grounds of extreme cruelty and irreconcilable differences.

## CONCLUSION

[¶ 23.] Based upon the foregoing standards and factors, we find that Viannie has failed to establish that the trial court abused its discretion in the property division and denial of alimony. The majority of the marital investment assets were divided according to the agreement of the parties. $620,000 of the $680,000 in disputed assets were awarded to Keith. This award was the real property and marital home that Keith brought into the marriage as part of his original $1,229,290 contribution. While the trial court was not obligated to consider when and how this property was accumulated when it divided the marital assets, neither was it prohibited from doing so. *See Buseman v. Buseman,* 299 N.W.2d 807, 809 (S.D.1980) (while trial court may consider when and how property was accumulated, it is not obligated to do so).

[¶ 24.] Moreover, this Court has previously accepted property divisions that have accounted for a disproportionate contribution to the marital estate by one of the parties either by setting some assets aside in the valuation process or through the final distribution of assets. *See e.g., Feldhaus, supra* (46%/54% property split upheld partially on basis that one party contributed twice as much as the other toward accumulation of marital assets); *Pellegrin v. Pellegrin,* 1998 SD 19, 574 N.W.2d 644 (no abuse of discretion in allowance of set-aside for value of family land as premarital contribution); *Billion, supra* (set-aside of three assets held by wife as non-marital property no abuse of discretion).

[¶ 25.] Several factors also support the trial court's similar methodology here. Keith entered into the marriage owning the Meade County property, which he owned before 1960 and throughout the duration of his first marriage. In addition to the Meade County property, his capital contribution at the inception of the marriage was not only substantial, but it provided virtually all of the assets on which the later financial success and prosperity of *both* of the parties was built. As the trial court noted, all of Viannie's separate assets can be traced to Keith's monetary contributions. Because of Keith's contributions, Viannie's own net worth substantially increased during the marriage. The trial court found that the total marital estate grew by 1.3 million dollars and that Viannie realized 66% of that growth in the final property distribution.

[¶ 26.] It is also significant that Keith's net worth increased and decreased during the marital relationship, especially after the parties' remarriage in 1984. After 1984, Keith's assets decreased in value by approximately $1,028,000 while Viannie's increased by approximately $733,000. Part of this disparity in growth was attributed to substantial monetary gifts Keith made to his children and to Viannie's relatives during the marriage, thus reducing his separate assets. Representative of these gifts are the gold Krugerands which Keith claims he is gifting to his children (including his children by Viannie). In addition, most, if not all, of the property taxes and income taxes on the marital assets (including Viannie's), and all of the parties' monthly living expenses were paid from Keith's separate funds. Viannie's funds were thus not dissipated for these purposes. Based upon all of the foregoing circumstances, we find no abuse of discretion in the trial court's treatment of the Meade County property and the gold Krugerands.

[¶ 27.] Even if the trial court's property division left Keith with a slight advantage in income producing property, a fif-

ty/fifty distribution was not required. *See Feldhaus, supra* (in making equitable division of property, trial court is not bound by any mathematical formula); *Pellegrin, supra* (we will not bind trial court to strict mathematical formula when reviewing a property division); *Endres v. Endres,* 532 N.W.2d 65, 71 (S.D.1995)(trial court's division of property not bound by any mathematical formula). This Court has repeatedly refused to " 'fine-tune the handiwork of those to whom the division of [marital] property has been entrusted.' " *Christians,* 2001 SD 142 at ¶ 13, 637 N.W.2d at 380 (quoting *Buseman,* 299 N.W.2d at 807). We refuse to do so here.

[¶ 28.] In her alimony argument Viannie focuses on her need for insurance and the income producing capacity of the property awarded to the parties. Virtually all of the property Viannie retained was income producing, and most of the property that Keith retained was income producing (the real property has some rental capacity). Through her own re-interpretation of the figures and estimates utilized by the trial court, Viannie argues that the $914,884 in cash and income producing assets awarded to her will leave her in a financial state "only slightly above the poverty level." It is notable that in making this argument she relies on evidence of the *taxable* income of the parties in prior years which, presumably, would not reflect the *tax exempt* accounts that brought her income of as much as $13,822 in 1999 and $15,027 in 2000. The parties' actual incomes for 1999 and 2000 reflect that in 1999, Viannie's assets produced net income of $42,335 and Keith's produced gross income (before paying the parties' taxes) of $53,810. In 2000, Viannie's assets produced net income of $47,882 while Keith's produced gross income (before paying taxes) of $59,328. This evidence makes clear that, while the trial court arrived at a 64%/36% property split favoring Keith in terms of the total property award, it divided the income producing property essentially *equally.* Moreover, the trial court considered the income that could be produced from these assets in the future together with Viannie's health, her desire to move to California and the cost of insurance.

[¶ 29.] Based upon all of the foregoing facts, we find no abuse of discretion in the property distribution and denial of alimony.

[¶ 30.] Affirmed.

[¶ 31.] GILBERTSON, Chief Justice, SABERS, KONENKAMP, and ZINTER, Justices, and AMUNDSON, Retired Justice, participating.

[¶ 32.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.