2003 SD 77

**Brenda M. DEJONG, Plaintiff and Appellant,**

v.

**Keith B. DEJONG, Defendant and Appellee.**

**Nos. 22650, 22654.**

Supreme Court of South Dakota.

Considered on Briefs May 27, 2003.

Decided July 2, 2003.

Sara E. Eng, Richard A. Johnson of Strange, Farrell & Johnson, P.C. Sioux Falls, for plaintiff and appellant.

Michael D. Stevens of Blackburn & Stevens, Prof. L.L.C., Yankton, for defendant and appellee.

SABERS, Justice.

[¶ 1.] The trial court granted a divorce to Keith and Brenda Dejong based on irreconcilable differences on October 25, 2002. The trial court awarded Keith general alimony of $1,000 per month until he is 62 years old and restitutional alimony of $400 per month for ten years. Brenda appeals claiming the trial court abused its discretion in awarding the amounts and both types of alimony. By notice of review, Keith appeals arguing the trial court abused its discretion by not awarding more general and restitutional alimony and by not extending the restitutional alimony until he becomes 62 years old. We affirm.

## FACTS

[¶ 2.] Brenda and Keith were married shortly after they graduated high school in 1975. At the time of the marriage, Brenda was pregnant with the first of the couple's three children. After they married, both of them began attending college at the University of South Dakota campus in Springfield. In fall 1976, Brenda left school because she was pregnant with their second child and was having compli-

cations with the pregnancy. Keith obtained his associates degree and the family moved to Rapid City where he received his bachelor's degree in engineering. While Keith attended school, and until 1986, Brenda was primarily employed as a full-time homemaker and caretaker for the children, except that from 1982–83 she provided in-home daycare and for a short period when Keith was unemployed, she worked two outside jobs. She also taught piano lessons to supplement their income.

[¶ 3.] In 1986, Brenda enrolled at the University of South Dakota in Vermillion. By 1988, she was accepted into medical school. Her education, like Keith's, was financed through student loans. Brenda graduated from medical school in 1992. She did her residency in Sioux Falls. Upon completion of her residency, she was hired by a medical clinic in Sioux Falls. The family moved from Yankton to Sioux Falls so that they could be together during her residency. Keith left his job in Yankton and transferred to the City of Sioux Falls engineering department. One year later, Brenda accepted a position at the Yankton Medical Clinic. Keith subsequently took a job in Yankton and the couple purchased a home.

[¶ 4.] Brenda initiated the divorce in 1996, approximately 6–7 years after completing medical school and after a 27–year marriage. Brenda admitted to having an extramarital affair. The trial court granted the divorce based on irreconcilable differences. The trial court awarded Keith general alimony of $1,000 per month until he reaches age 62, dies, remarries or cohabitates. Keith was also awarded $400 per month restitutional alimony for ten years, which will terminate upon the death of either party. Brenda claims the trial court abused its discretion by:

1) awarding general alimony of $1,000 per month until Keith is 62 years old; and

2) awarding $400 per month restitutional alimony for ten years.

By notice of review, Keith contends the trial court abused its discretion by:

3) failing to award him more than $1,000 per month general alimony; and

4) failing to award him more than $400 per month restitutional alimony and failing to extend it until he is 62 years old.

We consider each appeal issue together with each notice of review issue. We affirm the trial court on all issues.

### STANDARD OF REVIEW

[¶ 5.] Our standard of review for the trial court's alimony determination is abuse of discretion. "In determining whether there was an abuse of discretion, we ask, 'whether a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion'." *Savage v. Savage*, 2003 SD 46, ¶ 5, 661 N.W.2d 762, 764 (internal citations and quotations omitted). We will not set aside the trial court's findings of fact unless they are clearly erroneous. *Keller v. Keller*, 2003 SD 36, ¶ 8, 660 N.W.2d 619, 622 (quoting *Harksen v. Peska*, 2001 SD 75, ¶ 9, 630 N.W.2d 98, 101).

[¶ 6.] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING GENERAL ALIMONY OF $1,000 PER MONTH UNTIL KEITH BECOMES 62 YEARS OLD.**

[¶ 7.] A party requesting alimony has the burden of proving their need for support and that their former spouse "has sufficient means and abilities to provide for part or all of that need." *Anderson v. Anderson*, 2002 SD 154, ¶ 12,

655 N.W.2d 104, 107 (quoting *Urban v. Urban*, 1998 SD 29, ¶ 7, 576 N.W.2d 873, 875 (additional citations omitted)). The factors that must be considered in determining the need for, amount and duration of alimony are: (1) length of the marriage; (2) respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in the divorce. *Anderson*, 2002 SD 154 at ¶ 12, 655 N.W.2d at 107–108 (citing *Urban*, 1998 SD 29 at ¶ 8, 576 N.W.2d at 875 (additional citation omitted)).

*Length of Marriage.*

[¶ 8.] The Dejongs were married for 27 years.

*Respective Earning Capacity of the Parties.*

[¶ 9.] The trial court found that Brenda draws $10,000 per month from the medical clinic and also receives distributions every quarter based on productivity. In 2001, she received her monthly draw plus $45,517.68 for productivity, for gross wages of $165,517.68 and taxable income of $155,833. Yankton Medical Clinic pays an amount equal to 15% of the first $170,000 of Brenda's gross annual earnings to her profit sharing plan for retirement. In 2001, that equaled $24,827.65, and is not included in her $165,517.68 earnings for 2001. Brenda also receives $7,900 per year for education and supplies to be used at her discretion. Whatever she does not use is given to her as additional salary. Brenda currently pays $916 per month into her 401k program. The court determined that a realistic budget for Brenda is $6,200 per month.

[¶ 10.] The trial court found that Keith earns $61,000 per year. During their marriage and in order to help support the family and purchase their homes, Keith withdrew funds from various retirement accounts. He is now purchasing back credited service in the South Dakota State Retirement Plan. He is eligible to buy back $55,478.46 of his retirement for $403.38 per month for ten years. The court found that a realistic budget for Keith is between $4,200 and $5,000 per month.

*Age, Health and Physical Condition of the Parties.*

[¶ 11.] At the time of trial, Brenda was forty-five years old and Keith was within one month of turning forty-five. Although both Brenda and Keith experienced health difficulties during the marriage, they are now in good health. There is no indication in the record that either party has any physical impairment.

*Station in Life or Social Standing.*

[¶ 12.] The trial court found that the parties were living at a middle class standard until Brenda obtained her medical degree. The trial court found that since then, they were living at an upper middle class standard. The trial court found that once she obtained her medical degree, they were able to purchase a "very nice spacious house" and take "numerous vacations around the United States and internationally." The court found that as a result of the divorce, Keith's station in life based on his income will decline while Brenda's station in life will continue to be consistent with that of a medical doctor.

[¶ 13.] Brenda asserts that the trial court erred in determining that the couple was within the upper middle class because they only experienced that lifestyle for approximately 2 years of the marriage. Regardless of how long the parties enjoyed this lifestyle, it was their station in life at the time of the divorce and Brenda has not shown that the finding was clearly erroneous.

*Relative Fault in the Divorce.*

[¶ 14.] The trial court found that Brenda committed adultery during the marriage.

## ANALYSIS OF THE FACTORS

■ [¶ 15.] Brenda concedes that as a doctor, she has greater earning capacity than Keith. She also acknowledges that she takes a monthly draw of $10,000 and receives additional distributions to reflect productivity. She contends that the trial court's finding that she could expect to earn between $150,000 and $180,000 is clearly erroneous. She claims that her 2002 projected gross income would be only $128,000 and therefore contends that the trial court's findings of fact regarding her income are clearly erroneous. This assertion fails in light of the fact that *her* "projected gross income" for 2002 fails to take into account two quarterly payouts for productivity, the $7,900 she receives for education and supplies, and the amount of her earnings that her employer pays into her retirement. She has not shown that the trial court's finding regarding her income was clearly erroneous.

■ [¶ 16.] Brenda argues that the trial court abused its discretion in determining that she has the ability to pay $1,000 per month in general alimony. She contends that the trial court erred in using her earnings from 2001 to determine her ability to pay alimony because her earnings for that year were "anomalous." She further argues that after deductions for federal income tax, Social Security tax and Medicare tax, her disposable monthly income is $7,539.69. She argues that her monthly budget is $7,687.86, leaving her $148.17 over budget. However, the trial court found that a reasonable monthly budget for Brenda was $6,200. Reviewing Brenda's statement regarding her monthly expenses, it does not appear that the trial court erred in setting a $6,200 budget. Her statement of claimed expenses includes car insurance, clothes, and "miscellaneous" expenses for the parties' son, Chris. Those expenses do not seem reasonable in light of the fact that Chris is an adult who recently graduated from college. Further, she includes her expenses associated with the divorce ($200 per month), depreciation on her vehicle ($390 per month) and attorney's fees ($720 per month) in her monthly budget. Brenda has not shown that the trial court was clearly erroneous in its determination that she has the ability to pay alimony.

■ [¶ 17.] Brenda next argues that the trial court erred in finding that Keith was in need of spousal support. The trial court found that a budget between $4,200 and $5,000 per month would realistically place Keith at the standard of living he maintained when he was married. His net income was found to be approximately $3,300 per month. Brenda seems to argue that Keith's monthly budget would not be so high if he wasn't paying so much into his retirement program. He is currently paying $1,378 per month into retirement. However, the trial court found, and Brenda does not dispute that Keith cashed in portions of his retirement accounts during their marriage to help support the family and purchase marital assets while Brenda attended medical school and completed her residency. Her argument that his contribution exceeds hers and is therefore an unreasonable expense is unpersuasive. This is especially so considering that in addition to the approximately $900 per month that she contributes, Brenda's employer contributes an amount equal to 15% of her income to her retirement.

■ [¶ 18.] By notice of review, Keith argues that the trial court abused its dis-

cretion by not awarding more alimony. Specifically, he argues that the proper amount should have been $4,642.91 per month. Keith apparently arrives at this figure by taking the total incomes of both parties and dividing them equally. He argues that this is the only way he will be provided for in the manner to which he became accustomed during the marriage and that failure to award him this amount was abuse of discretion. Keith offers no support for his proposed calculation of alimony. Further, he points to no finding by the trial court that was clearly erroneous; he simply makes the bare assertion that unless they both have the same income each month, they do not enjoy the same standard of living and therefore the trial court's decision was abuse of discretion. There is no support offered nor can we find any support for this assertion. Keith fails to show that he has a need for this amount of alimony or that Brenda can afford to pay it.

[¶ 19.] The parties have not shown that the trial court's award of $1,000 per month general alimony until Keith reaches age 62 was an abuse of discretion.

[¶ 20.] Affirmed.

[¶ 21.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING KEITH $400 PER MONTH RESTITUTIONAL ALIMONY FOR A PERIOD OF 10 YEARS.**

[¶ 22.] The trial court awarded Keith $400 per month restitutional alimony for ten years. Brenda argues that the award was an abuse of discretion. Keith argues that the trial court abused its discretion by limiting the award to ten years and $400 per month.

[¶ 23.] "The purpose of restitutional alimony (also called reimbursement alimony) is to reimburse [a] spouse's contribution during the marriage to the advanced training or education of the other spouse." *Parsons v. Parsons*, 490 N.W.2d 733, 738 (S.D.1992). In determining whether to award restitutional alimony, the trial court, in addition to the traditional alimony factors, should consider,

> the amount of the supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the non-supporting spouse's professional education.

*Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 262 (S.D.1984) (additional citations omitted). As with general alimony, an award of restitutional alimony is left to the sound discretion of the trial court. *Id.*

[¶ 24.] To finance her education, Brenda borrowed approximately $60,000 in student loans. During the course of their marriage, the couple paid off approximately $47,000 of those loans. The loans were also used to pay family and household expenses while she went to school. The trial court found that during the time she was in school, both of the parties worked hard to take care of their family and that "Keith assumed significant additional responsibilities to the family while Brenda pursued her ... degree ... residency ... and medical license."

[¶ 25.] The trial court noted in its memorandum decision that "Keith has foregone, to a small degree, his income and benefits as a result of moving back to Yankton from Sioux Falls" when Brenda took the job at Yankton Medical Clinic. The court found that Keith cashed in "various retirement accounts ... and used the proceeds to invest in the parties' marital assets." Specifically, the family moved from Yankton to Sioux Falls so that they could be together during her residency.

After completing her residency and working at a clinic in Sioux Falls for approximately one year, the parties decided to move back to Yankton because Yankton Medical Clinic offered better pay and the parties wished to be closer to family. Prior to both moves, Keith cashed in his retirement accounts and used the funds to place down payments on homes and to pay family expenses. The trial court found that Keith is eligible to buy back $55,478.46 of his South Dakota State Retirement at $403.38 per month for ten years.

[¶ 26.] Brenda argues that both parties were able to obtain the necessary education and pursue their chosen career and therefore restitutional alimony should not apply. It is true that during the first years of their marriage, Brenda stayed home with the children while Keith pursued his degree in engineering. However, in reviewing alimony, the classification of the award is not as important as the question whether the record supports the award. *Hautala v. Hautala*, 417 N.W.2d 879, 881 (S.D.1988). The trial court's findings support the award of alimony based on 1) Keith's need to reestablish his retirement package; 2) his contributions to the family's home life while Brenda completed her medical training; and 3) the relatively short period of time elapsing between completion of her training and her filing for divorce. Brenda has not shown that the trial court abused its discretion in awarding $400 per month restitutional alimony over the next ten years.

[¶ 27.] Keith argues that the trial court abused its discretion in limiting the award to ten years. The findings of fact support the inference that the limitation on the alimony is based on the fact that Keith's retirement buy back will be finished at the end of ten years. Keith has not shown a need for an award for more than ten years. Nor has Keith shown a need for an award greater than $400. At the end of ten years, he will have finished purchasing back his retirement benefits and his take-home pay will thereby increase approximately $400 per month. He has not shown that the trial court abused its discretion by limiting the award.

[¶ 28.] The trial court is affirmed.

[¶ 29.] **3. ATTORNEY FEES**

[¶ 30.] In accord with *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985), both Keith and Brenda submitted motions for appellate attorney fees. Keith has requested an award of $2,208.70 and Brenda has requested an award of $2,151.27. To determine whether attorney fees are proper in domestic relation cases, we consider, "the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Peterson v. Peterson*, 434 N.W.2d 732, 738 (S.D.1989) (additional citations omitted). Taking these factors into consideration, along with the merits of the parties' arguments, we award no appellate attorney fees.

[¶ 31.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.