Phyllis F. PARADEIS, Plaintiff and Appellant,

v.

Donald L. PARADEIS, Defendant and Appellee.

No. 16814.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1990.

Decided Oct. 3, 1990.

David C. Humphrey, Yankton, for plaintiff and appellant.

Michael A. Jackley, Sturgis, for defendant and appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Phyllis Paradeis (Phyllis) filed an Application for Order to Show Cause based upon Donald Paradeis' (Donald) delinquency in the making of alimony payments.

On May 26, 1989, the Court heard evidence relating to this matter. The Court determined that monies Phyllis had received from Donald after their divorce would be considered alimony and not a loan, relieving Donald of any alimony arrearages and that alimony would cease in this matter. On appeal Phyllis argues:

(1) That the trial court abused its discretion in holding that Donald's reduced earning capacity constituted a change in circumstances, sufficient to allow the court to terminate alimony; and

(2) That the trial court abused its discretion in determining that cohabitation between the parties subsequent to the divorce occurred as a matter of law and that alimony should terminate.

—Holding—

We affirm in part, reverse in part.

### FACTS

Phyllis and Donald were married on October 3, 1953, in Epiphany, South Dakota. A Decree of Divorce and Judgment was filed on October 19, 1981. Pursuant to an agreement, Donald was to pay Phyllis $225.00 per month as alimony.[1] Shortly

---

1. Paragraph XV of the Stipulation and Decrees of Divorce is as follows:

ALIMONY

Defendant agrees to pay to 'Plaitniff [sic] as and for alimony the sum of $225 per month, which payments shall commence on the 1st day of November, 1981 with like payments to be made on the first day of each and every month thereafter until any one of the following events occurs:

The death of the Plaintiff;
The remarriage of Plaintiff;
The cohabitation of Plaintiff with a person of the opposite sex. Such cohabitation shall not include landlords, boarders, roomers, tenants or family members.
The death of Defendant.
It is further agreed that the amount of such alimony shall be re-evaluated in the event of Defendant's ability to work is permanently di-

after the divorce, Donald and Phyllis began living together. Phyllis styled this cohabitation as an attempt at reconciliation and further indicated that she was aware that the divorce decree provided that if she cohabited with someone, alimony would cease.

From January of 1982 through April of 1987 Donald gave to Phyllis a total of $5,697.00 for her use, above and beyond all property settlement agreements, payments and alimony. Phyllis testified at the hearing that she had received the money and used it to fix up her Sioux Falls house (awarded to her in the Divorce Decree), pay taxes on that house, and pay her hospitalization insurance. At the hearing, Donald testified that such money was a loan and had been requested by her. Further, Donald testified that although Phyllis had indicated several times she would pay the money back, she failed to do so.

In June of 1987, Donald complained he had shortness of breath and chest pain. Later, in July 1987, Donald underwent treatment for blockage in his artery. From June 1987, until mid-September 1987, Donald, under doctor's orders, did not work. He had been a mechanic and foreman at Hersruds Motor Company in Sturgis since 1975. Donald worked one-half days from mid-September 1987 to November 1987, when he went to three-fourths days and at the end of 1987 went to full days. Prior to his heart problems, he worked on a commission basis and later received a salary because of the stress of working on a commission basis.

In December 1987, Donald wrote Phyllis that his income had been reduced, that he was going to consider the money he had given her in the past as alimony and that he was sending her $125.00. Donald attempted to negotiate with Phyllis regarding the alimony during August of 1987.

Eventually, Donald was told by his physician to cease working, at least until he was re-evaluated on June 15, 1989.

## DECISION

I. *The trial court did not abuse its discretion in determining that Donald's reduced earning capacity constituted a change in circumstances, sufficient to allow the court to terminate alimony.*

■ Once a court approves an alimony award, it can modify it. This authority of a trial court is not affected by the fact the original divorce judgment was based on an agreement between the parties, as reflected in footnote 2. *Connolly v. Connolly*, 270 N.W.2d 44 (S.D.1978).

■ SDCL 25–4–41 allows a trial court to modify support orders from time to time.[2] No modification of an alimony award can be made unless there is a change of circumstances from the circumstances which existed at the time of the original decree. *Foley v. Foley*, 429 N.W.2d 42 (S.D.1988), *citing Lambertz v. Lambertz*, 375 N.W.2d 645 (S.D.1986). The burden of proving such a change in circumstances is on the party seeking modification. *Wegner v. Wegner*, 391 N.W.2d 690 (S.D.1986). The standard of review on appeal of a modification of alimony is abuse of discretion. *Wegner, supra.* In *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D. 1988) we held that, "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." The trial court's decision to terminate alimony is not clearly against reason and evidence. Here, the trial court found Donald proved a change in circumstances to justify termination of the spousal maintenance awarded in 1981. In June 1987, Donald suffered a

minished for medical reasons and at doctors' orders. Defendant agrees that confirmation of Defendant's medical condition may be established to the satisfaction of Plaintiff by Defendant submitting himself to examination by a doctor of Plaintiff's choice and at Plaintiff's expense.

2. "Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects."

one-half hour period of shortness of breath, and chest pain associated with it. Donald underwent cardiac catherization on July 14, 1987 in Denver, Colorado, where it was learned that his left anterior descending coronary artery had a 95% lesion. He was diagnosed as having "single vessel coronary artery disease with severe proximate stenosis of the left anterior descending artery." On July 20, 1987, Donald underwent an angioplasty procedure to relieve the blockage.

From June 1987, until mid-September 1987, Donald did not work. His usual employment was as a mechanic. He worked one-half days from mid-September 1987, to November 1987, when he went to three-fourths days. At the end of 1987, he went to full days. Eventually, because of his worsening heart condition, Donald was ordered by his physician to cease working, at least until he was re-evaluated June 15, 1989. Donald carries no disability insurance, but is in the process of applying for disability under Social Security.

Because of Donald's medical condition, he had a reduction in wages which constitutes a change in circumstances and further which situation is provided for in Paragraph XV of the Stipulation.[3] We believe this change in circumstances was sufficient to terminate Donald's required obligation to provide support for his wife under the circumstances then attending. Therefore, we hold that the trial court did not err in its Order.

II. *The trial court abused its discretion in determining that cohabitation between the parties was grounds for termination of alimony.*

■■ On the merits of the issue, it is first to be noted that there was considerable equivocation on the part of Donald, whether he had cohabited with Phyllis. Inasmuch as Phyllis herself testified that they had indeed cohabited, her admission has to be taken into consideration and sup-

ports the trial court's finding to that effect. The issue then becomes one of law: Does the agreement as contained in the stipulation, apply to this factual situation? We would think that it does not and cannot.

■ The first basis for rejecting the trial court's conclusion is founded in equity. Under basic principles of equity, Donald cannot be allowed to induce Phyllis to cohabit with him in order to furnish grounds for termination of the alimony. *Cf. Rice v. Rice,* 603 P.2d 1125 (Okla.1979); *Hawn v. Hawn,* 505 S.W.2d 459 (Mo.App.1974). Second, in *Myhre v. Myhre,* 296 N.W.2d 905 (S.D.1980), we said only that cohabitation of an alimony recipient is a circumstance that may be considered insofar as it improves recipient's economic status. *See also Horr v. Horr,* 445 N.W.2d 26, 28 (S.D. 1989) ("Although remarriage makes a prima facia case for termination of alimony, ... cohabitation, in and of itself, is not a circumstance upon which alimony may be modified or terminated. Cohabitation may be considered as a sufficient change in circumstances for alimony modification only when it affects the financial needs of the recipient." (Citations omitted)). While the alimony stipulation in *Myhre* was silent as to cohabitation, we see no reason to distinguish it from this case.

■ Although Phyllis argues that the trial court's memorandum opinion also found a basis for termination due to her receipt of an airplane ticket from her former employer, a 100–year–old gentleman, to permit her to visit her daughter in Europe, that was not carried forward in the trial court's findings of fact and conclusions of law, nor was the memorandum opinion incorporated therein, so that issue is not before us. *Moser v. Moser,* 422 N.W.2d 594, 596 (S.D.1988); *Connelly v. Sherwood,* 268 N.W.2d 140, 142 (S.D.1978).

■ Finally, the order by the trial court did bar future alimony by expressing alimo-

---

**3.** In 1985 Donald's IRS adjusted gross income was $28,116.00, in 1986 it was $29,026.00, in 1987 it was $21,759.62 and in 1988 his take home pay was $18,065.72.

ny would cease. We hold this language is too encompassing of facts which could arise in the future. If, at a subsequent hearing, it appears that Donald's health has improved, allowing him to work, and other circumstances warrant a resumption of alimony in some degree, the trial court should not be powerless to act.

Affirmed in part, reversed in part.

All the Justices concur.