1996 SD 18

**Erik Russell SAXVIK, Plaintiff and Appellee,**

v.

**Karen Evelyn SAXVIK, Defendant and Appellant.**

No. 18856.

Supreme Court of South Dakota.

Considered Oct. 19, 1995.

Decided Feb. 28, 1996.

Russell R. Greenfield, Gregg S. Greenfield of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and appellee.

William Fuller of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Karen Saxvik (Karen) appeals the reduction and eventual elimination of alimony in a proceeding brought by Erik Saxvik (Erik) to modify the terms of the original judgment and decree of divorce relating to alimony. We affirm as to an incremental reduction in alimony but reverse as to its complete termination.

## FACTS

[¶ 2] Karen and Erik were divorced in 1992. The parties agreed on a division of the property, which was adopted by the trial court. The matter of alimony was tried to the court, and Karen was awarded permanent alimony in the amount of $1,500 per month. In its original findings of fact and conclusions of law, the trial court detailed the earnings, expenses, and health of each party.

[¶ 3] To summarize, in 1992, Karen worked part-time as a teacher, earning $365 per month on an annual basis. She required an additional 6 hours of course work to bring current her teaching certificate. In addition, Karen had been diagnosed with breast cancer in 1990 when a tumor was removed, and she underwent chemotherapy as well as radiation therapy. Her physicians rated her at a twenty-five per cent risk for recurrence of the cancer until 1996 or 1997. Karen's recovery was limited and she was unable to endure the rigors of full-time work at the time of the divorce. Also at that time, Karen suffered from colitis. Her monthly living expenses were approximately $2,000.

[¶ 4] In contrast, in 1992, Erik was the senior pastor at Our Savior's Lutheran Church, earning an annual salary of $41,900, plus allowances of nearly $40,000 for housing, car, office, medical benefits, and a pension. He was in good health. His monthly living expenses were approximately $2,000.

[¶ 5] In its memorandum decision at the time of the divorce proceedings (which was incorporated into the findings), the trial court explained its rationale as follows:

Besides upgrading her skills, there are still two factors of concern to this court. First of all, even if she were to renew her [teaching] certificate, she would still need to gain full-time employment. Her health at this juncture prohibits her from accomplishing full productivity. Secondly, the most [Karen] could expect as a teacher is around $20,000, still far below the standard of living to which she was accustomed. It is, therefore, the opinion of this court that an award of supportive alimony is needed at this time.

\* \* \*

If [Karen's] health improves and the prognosis of cancer reoccurrence improves and if she is able to gain full-time employment, the alimony award should be reviewed and reduced accordingly; if she remarries it should cease....

The judgment was filed February 26, 1992.

[¶ 6] Two years later, on February 1, 1994 Erik filed a motion for an order to show cause, seeking a reduction in alimony based on changes in the circumstances of both parties. Following an evidentiary hearing, the trial court concluded that a change in circumstances had occurred because Erik had taken a different job in Oregon and Karen had obtained full-time employment with the school system at a wage of approximately $22,000 per year. Based on these changes, the trial court modified the alimony award by reducing it to $1,000 per month beginning on July 1, 1994, another reduction down to $500 per month beginning on January 1, 1995, and a complete elimination of alimony on January 1, 1997. From this modification to the original judgment and decree, Karen appeals.

**[¶ 7] The trial court's modification of alimony constitutes an abuse of discretion.**

[¶ 8] Karen contends that the facts do not demonstrate a change in circumstances sufficient to justify a modification and complete elimination of the original alimony award. She contends that Erik did not demonstrate that his income had been reduced, that the earning capacity of either party had changed, or that her health had changed. Based on the circumstances of this case, we agree that the trial court should not have modified the alimony to the point of complete elimination.

[¶ 9] The applicable law is not in dispute. We will not disturb an award of alimony unless the trial court clearly abused its discretion. *Steffens v. Peterson,* 503 N.W.2d 254 (S.D.1993). In reviewing a modification of alimony, we must determine whether a judicial mind, in view of the law and the circumstances of the particular case, could have reasonably reached such a conclusion, not whether we would have made an original like ruling. *Id.*

> To justify a change in alimony payments there must merely be a change of circumstances from the circumstances which existed at the time of the original decree. A substantial change of circumstances is not applicable in a proceeding for modification of alimony. The burden of proving a change in circumstances is on the party seeking modification.

*Horton v. Horton,* 503 N.W.2d 248 (S.D.1993) (citations omitted).

[¶ 10] In reviewing the trial court's decision, we must also consider the effect that total elimination of alimony would have if Karen suffered a recurrence of cancer after alimony had been terminated. We reaffirm the closing comments we made in *Paradeis v. Paradeis,* 461 N.W.2d 135 (S.D. 1990). In *Paradeis,* we rejected the trial court's termination of alimony to the extent it purported to bar any future reinstatement of alimony.

> Finally, the order by the trial court did bar future alimony by expressing alimony would cease. We hold this language is too encompassing of facts which could arise in the future. If, at a subsequent hearing, it appears that [ex-husband's] health has improved, allowing him to work, and other circumstances warrant a resumption of alimony in some degree, the trial court should not be powerless to act.

*Id.* at 138–39. This language implied that trial courts have continuing jurisdiction to reinstate alimony awards which have previously terminated if a change in circumstances warrants such a modification. It recognizes the uncertainty of the future, especially where it relates to the health of the obligor or recipient, which is a proper consideration in the award of alimony.

[¶ 11] We now hold that the termination of an award of periodic alimony does not bring an end to the jurisdiction of the court to consider whether alimony should be reinstated at a later time if a change in circumstances is demonstrated. Our holding is in accord with the explicit language of SDCL 25–4–41 which empowers the trial court to provide alimony "for support during the life of that other party or for a shorter period, as the court may deem just[.]" The statute further authorizes the trial court to "from time to time modify its orders in these respects."

[¶ 12] For years, this doctrine has been recognized in this state under the guise of the "one dollar per year" continuing alimony obligation. Our holding that continuing jurisdiction is maintained to modify periodic alimony eliminates the need for the trial court to speculate on an uncertain future by choosing between three inadequate and unfair options:

(1) Maintain the obvious fiction that an ex-spouse needs alimony to maintain his or her standard of living but decree that it can be done on one dollar per year, or

(2) Require the former spouse to overpay to cover all contingencies which might never occur, or

(3) Run the risk that the ex-spouse could become needy or destitute while the other former spouse carries on their lifestyle in substantial comfort.

Modification of alimony awards is predicated on the premise that a trial court cannot foresee all circumstances which may arise after the original decree is entered. *Foley v. Foley*, 429 N.W.2d 42, 46 (S.D.1988). Our holding is the application of reality to SDCL 25–4–41.

[¶ 13] This holding is limited, however, to those awards which are periodic in nature, and it does not apply to lump sum awards of alimony. We held in *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981), that lump sum alimony recognizes that finality attaches and the sum is not modifiable even if it is payable in installments over a fixed period of time. Likewise, our holding would not apply to restitutional or reimbursement alimony which has as its purpose to reimburse one spouse's contribution during the marriage to advance training or education of the other spouse. *Parsons v. Parsons*, 490 N.W.2d 733, 735 (S.D.1992); *Wilson v. Wilson*, 434 N.W.2d 742, 745 (S.D.1989).

[¶ 14] The treatment of rehabilitative alimony presents a close question. It is designed to permit a spouse the means necessary to enable him or her to refresh or enhance job skills necessary to become self-sufficient, and provide needed financial support while the spouse is obtaining necessary training. *Johnson v. Johnson*, 471 N.W.2d 156, 163 (S.D.1991); *Hautala v. Hautala*, 417 N.W.2d 879, 882 (S.D.1988). The criteria for consideration of rehabilitative alimony as set forth in *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 262 (S.D.1984), are: all relevant facts of the case including the amount of the supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the nonsupporting spouse's professional education. Clearly the costs of achieving a goal of rehabilitation may change with time after the divorce is final. Each case will be governed by its facts which cannot be anticipated here. Given that, it is prudent to await an appropriate case and apply its specific facts to our existing case law to determine the correct rule of law.

[¶ 15] Our holding also does not apply to divorce cases where the trial court found no basis for an award of alimony to begin with. In *Cameron v. Cameron*, 31 S.D. 335, 140 N.W. 700 (1913), such a rule was found to be jurisdictional as when "the judgment became final without any award of alimony ... the court could not afterwards 'modify' what never existed." 31 S.D. at 340, 140 N.W. at 701–2. We have consistently continued to adhere to that view. *Hershey v. Hershey*, 467 N.W.2d 484, 489 (S.D.1991).

[¶ 16] In dealing with the various types of alimony, it is not the label that is placed on the award that controls, but rather the nature of the award. *Hautala*, 417 N.W.2d 879.

[¶ 17] The trial court based its modification and elimination of alimony on the following findings:

### IV.

At the time of the original Judgment and Decree of Divorce, the primary alimony factors which weighed heavily with this Court were [Karen's] health problems and the amount of income she was able to earn. Other alimony factors were considered, but carried less weight. Relative fault was minimal. The parties received equal property division.

\* \* \*

### X.

That in the two years since the Judgment and Decree of Divorce, [Karen] has not been treated for a recurrence of cancer[,] *Horton v. Horton,* 503 N.W.2d 248 (S.D.1993) (citations omitted), and [her] health has improved to the point that she is able to work full time albeit with some exhaustion. [Karen] is still at risk of cancer reoccurrence and will not be out of danger for approximately one year.

### XI.

Since the time of the original Judgment and Decree of Divorce, [Karen] has become fully employed in the Sioux Falls School District as a teacher and earns $22,837 annually, with a monthly pre-tax disposable income of $1,426.

\* \* \*

### XVII.

At the time of the Original Judgment and Decree, [Karen] needed supplemental support but with her full employment as a teacher, such supplemental support is not now needed.

### XVIII.

[Erik] has taken a new job as a senior pastor at the St. Matthew's Lutheran Church in Beaverton, Oregon. [He] earns a base salary of $65,000 annually, plus a benefit package of $16,004 for pension, disability and medical/dental. After subtracting alimony payments pursuant to the original Judgment and Decree, [Erik] has approximately $47,000 pre-tax disposable annual income.

[¶ 18] The focus of this appeal is plainly on whether Karen's improved health, which has enabled her to return to work on a full-time basis, justifies a reduction and eventual elimination of alimony given the fact that she is at a twenty-five per cent risk for recurrence of breast cancer until 1995 and some lesser risk until 1996 or 1997.* Karen contends the findings do not demonstrate a change in circumstances because her higher income level was anticipated by the trial court when it made the alimony award and there has been no change in her cancer prognosis. Further, even if their circumstances have changed, she urges that the nature of the changes does not support the trial court's decision to eliminate alimony.

[¶ 19] We recognize, and Karen concedes, that having achieved full-time employment at an annual salary of approximately $22,000 is a change from two years ago when her part-time employment earned her just over $4,000 a year. However, in awarding alimony, the trial court contemplated this increase and based its original decision, in part, on this fact:

> Besides upgrading her skills, there are still two factors of concern to this court. First of all, even if she were to renew her [teaching] certificate, she would still need to gain full-time employment. Her health at this juncture prohibits her from accomplishing full productivity. Secondly, *the most [Karen] could expect as a teacher is around $20,000, still far below the standard of living to which she was accustomed.* It is, therefore, the opinion of this court that an award of supportive alimony is needed at this time.

---

* Erik's move to the pastorate of another church had almost no effect on his income, it being only modestly reduced from what it had been at the time of the divorce. While we have held in the past that one who intentionally reduces his or her post-divorce income cannot rely on that as a change in circumstances, here the reason for the move may well have been religious rather than financial. The First Amendment to the United States Constitution prohibits secular courts from adjudicating disputes which necessitate "the in-

terpretation of ambiguous religious law and usage." *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 708–9, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151, 162 (1976). *See also Foss v. Dykstra,* 342 N.W.2d 220 (S.D.1983). Here, the trial court acknowledged the modest reduction in income but clearly focused its decision based on the issues of Karen's health and increased income. Therefore, we limit our review to those two points.

(Emphasis added.) In fact, Karen's current income of $22,000 exceeds by ten per cent the $20,000 level at which the trial court anticipated her earning capacity might be, should she achieve the ability to maintain full-time employment. Nonetheless, her income remains "far below the standard of living to which she was accustomed." Certainly this is a change which the trial court fully considered and actually anticipated when it made its alimony award. Since Karen's future increase in income was a factor considered at the time the award was made, that same fact cannot now be relied on to support the elimination of alimony.

[¶ 20] The trial court's alimony award was also based on the circumstances of Karen's health existing at the time of the divorce decree. While there had been no change in the fact the cancer had not recurred between the time of the divorce and the time of the hearing on Erik's motion, the court found that Karen's physical condition had improved and she was now "able to work full-time, albeit with some exhaustion." However, there was no evidence that her prognosis for recurrence of the cancer had changed; her health remained as precarious and uncertain as it was at the time of the divorce. Again, in making the original award, the trial court anticipated that Karen's health would improve to a point where she could reach full employment and found that her needs and standard of living warranted alimony of $1,500 per month.

[¶ 21] While the law governing a modification of alimony does not require a substantial change in circumstances, mere proof that a change has occurred does not mandate a modification of alimony. *Cf. Horton*, 503 N.W.2d 248. Trial courts do not mechanically modify their judgments based only on proof of a change; they are compelled to exercise their judgment to determine whether that change, based on all of the facts and circumstances of the case, justifies a modification. *Steffens*, 503 N.W.2d 254. The trial court stated in its divorce decision that the occurrence of such changes should allow the alimony to be "reduced accordingly" but not completely eliminated. Therefore, termination of all alimony was not justi-

fied and, in doing so, the trial court abused its discretion.

[¶ 22] Thus, we conclude that while the trial court had the legal authority to terminate alimony with the option of reinstating it in the future should circumstances dictate, the trial court, based on the facts of this case, did abuse its discretion in phasing out Karen's monthly alimony award to the point of complete termination. While incremental reduction in alimony was appropriate, total elimination was not. Likewise, in the future, should either party demonstrate a change in health, in employment or earning capacity, either party may seek a modification of the amount of alimony at that time. The matter is remanded to the circuit court for further proceedings to establish an appropriate amount of alimony.

[¶ 23] Both parties have made requests for attorney fees, accompanied by itemized and verified statements of expenses incurred on appeal. *See Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987), and *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). We award Karen $1,500 in appellate attorney fees.

[¶ 24] MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

GORS, Circuit Judge, concurs with writing.

[¶ 26] GORS, Circuit Judge, sitting for AMUNDSON, J., disqualified.

GORS, Circuit Judge, concurring.

I concur in the reversal of this case. When his wife of 27 years contracted breast cancer, the preacher divorced her. At trial, the court projected that the unwanted wife could earn $20,000 per year and the court set alimony at $1500 per month. Then, when the unwanted wife had the audacity to earn $2,837 more than anticipated, the preacher wanted to cut her alimony by $18,000 per year and the trial court agreed. The trial court's elimination of alimony was not justified when the preacher makes $81,004 and the unwanted wife only makes $22,837.