2003 SD 46

**Kathryn J. SAVAGE, Plaintiff and Appellee,**

v.

**James A. SAVAGE, Defendant and Appellant.**

**No. 22503.**

Supreme Court of South Dakota.

Considered on Briefs March 26, 2003.

Decided April 23, 2003.

Catherine V. Piersol, Piersol Law Office, Sioux Falls, South Dakota, Attorney for plaintiff and appellee.

Lee R. Burd, Sioux Falls, South Dakota, Attorney for defendant and appellant.

SABERS, Justice.

[¶ 1.] This is an appeal from a decision to extend an alimony award under a divorce decree based on an oral stipulation and agreement of the parties. The trial court determined that a time limited alimony award could be extended based on the trial court's inherent power to modify an alimony award upon proof of change in circumstances. Jim Savage, the husband and obligor, appeals. We affirm.

## FACTS

[¶ 2.] Jim and Kathryn Savage were divorced on February 26, 1997. The divorce decree incorporated an oral Stipulation and Agreement by the parties. The stipulation included an alimony award of five hundred dollars per month to Kathryn:

> [u]ntil [Kathryn's] death, remarriage, or cohabitation, or for a period of five years unless no stated qualifying event has occurred prior to the five year period. However, at the end of the fifth year, should a reputable neurologist determine that plaintiff is unable to work, at that time the alimony shall be re-evaluated.

The reason for this provision was that five years prior to the divorce, Kathryn was diagnosed with multiple sclerosis. The parties and court acknowledged that among the long term effects of the disease was a progressive worsening which might preclude Kathryn from working.

[¶ 3.] At the time of the divorce, Kathryn was working approximately three days per week as a surgical nurse. At the time of the motion for continuation of alimony, although she continued to work three days per week, the work and the hours created substantial stress and undermined her health. Between the date of divorce and the motion hearing, her pay had increased from approximately $25,000 per year to $35,000 per year. Jim is an anesthetist who at the time of divorce was earning approximately $90,000 per year. At the time of the motion hearing, Jim was residing in Florida with an income ranging between $86,000 and $110,000 per year.

[¶ 4.] The trial court found that Kathryn's condition had declined since the divorce. "She experiences more fatigue, loss of stamina, and periodic migraine headaches. She has also developed additional problems with tingling and numbness in her hands and she fears she may need carpal tunnel surgery. She also experiences symptoms as a result of her MS such as memory loss and slow speech." The evidence also revealed that although Kathryn continues to work, on her days away from work she is largely confined to bed because her body can no longer handle the rigors of her job and she needs her days off to recover. Based on these findings, the trial court granted Kathryn's motion for continuation of alimony and ordered Jim to continue paying Kathryn $500 per month. Jim appeals, raising the following issues:

1. Whether estoppel prevents the trial court from modifying the support agreement.

2. Whether alimony provisions made by the parties to a divorce and approved by the court without an evidentiary hearing are modifiable.

3. Whether the trial court abused its discretion in finding changed circumstances sufficient to warrant modification of the alimony award.

4. Whether Kathryn's motion for continuation of alimony was time-barred.

We affirm the trial court on all issues.

## STANDARD OF REVIEW

[¶ 5.] Our standard of review of a trial court's decision to modify alimony is abuse of discretion. *Steffens v. Peterson*, 503 N.W.2d 254, 257 (S.D.1993) (citations omitted). In determining whether there was an abuse of discretion, we ask, "whether a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *Id.* (quoting *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988)).

[¶ 6.] **1. WHETHER ESTOPPEL PREVENTS THE TRIAL COURT FROM MODIFYING THE SUPPORT AGREEMENT.**

[¶ 7.] Jim argues that Kathryn is estopped from her claim in accordance with this Court's decision in *Driscoll v. Driscoll*, 1997 SD 113, 568 N.W.2d 771. In *Driscoll*, we adopted a test to determine whether estoppel applies from the Wisconsin Supreme Court case of *Nichols v. Nichols*, 162 Wis.2d 96, 469 N.W.2d 619 (Wi.1991). The trial court held that *Driscoll* was limited to its facts and was therefore inapplicable in this case. A careful review of *Driscoll* and *Nichols* indicates that the doctrine of estoppel is not applicable in the present case.

[¶ 8.] In *Driscoll*, the parties entered into a stipulated agreement which provided in part that the wife would never raise her health or an increase in the stock awarded to her husband in the divorce as grounds for modification of alimony. The wife subsequently brought a motion for modification of alimony based on the two

issues she previously agreed not to raise as grounds for modification. *Driscoll*, 1997 SD 113 at ¶ 12, 568 N.W.2d at 773. Relying solely on *Nichols* for support, this Court adopted a four part test to determine whether a party to divorce was estopped from receiving modification of a stipulated maintenance agreement. The test promulgated by the Wisconsin Supreme Court in *Nichols* provides that a party will be estopped if:

1) "the *parties freely and knowingly stipulated to fixed, permanent, and non-modifiable maintenance payments* and said stipulation was incorporated into the divorce judgment";

2) "the stipulation was part of a comprehensive settlement of all property and maintenance issues which was approved by the circuit court";

3) "the overall settlement, at the time it was incorporated into the divorce judgment, was fair, equitable, not illegal and not against public policy"; and

4) "the party seeking release from the terms of the divorce judgment is seeking release on the grounds that the court did not have the power to enter the judgment without the parties' agreement."

*Nichols*, 162 Wis.2d at 100–101, 469 N.W.2d at 620–621 (emphasis supplied).

[¶ 9.] We agree with the trial court that our decision in *Driscoll* was limited to its facts. The wife in *Driscoll* specifically agreed to the stipulation that her maintenance was unmodifiable with respect to her health and her former husband's stock values. In the instant case, there was no agreement that the alimony provision was unmodifiable.

[¶ 10.] Jim argues that the only circumstance under which modification would be allowed would be if a neurologist testified that Kathryn was unable to work.

However, the language of the agreement is not that specific and does not entirely support that assertion. The language provides that alimony would continue until "death, remarriage, or cohabitation, or for a period of five years unless no stated qualifying event has occurred" and that alimony "shall be re-evaluated" should a neurologist testify she was unable to work. This language is close, but there was no agreement that the alimony provision was per se unmodifiable. In other words, there was no agreement that Kathryn was barred from seeking modification of her alimony based on her health problems. Therefore, the general proposition that alimony provisions are modifiable remains in force and Kathryn is not estopped from seeking modification.

[¶ 11.] **2. WHETHER ALIMONY PROVISIONS MADE BY THE PARTIES TO A DIVORCE AND APPROVED BY THE COURT WITHOUT AN EVIDENTIARY HEARING ARE MODIFIABLE.**

[¶ 12.] Jim argues that while alimony provisions made by a court after an evidentiary hearing are modifiable, those made by the parties and approved by the court without such a hearing are not modifiable. The trial court found to the contrary, holding that "[t]he court's authority to modify an alimony award is not affected by the fact that the original divorce judgment was based on an agreement between the parties." Jim argues on appeal that the trial court's holding was abuse of discretion because the cases it relied on were factually distinguishable from the case at hand.

[¶ 13.] This Court has been very clear about a trial court's ability to modify an alimony award. In *Paradeis v. Paradeis*, we reiterated the rule that "[o]nce a court approves an alimony award, it can modify

it. This authority of a trial court is not affected by the fact [that] the original divorce judgment was based on an agreement between the parties[.]" 461 N.W.2d 135, 137 (S.D.1990) (citing *Connolly v. Connolly*, 270 N.W.2d 44 n. 2 (SD 1978)). In *Harding–Moyer v. Harding*, we again acknowledged that a stipulation in the nature of spousal support or maintenance was not contractual in nature, but rather that it was subject to modification or termination on a showing of changed circumstances. 2000 SD 126, ¶ 13, 616 N.W.2d 899, 902 (citing *Saxvik v. Saxvik*, 1996 SD 18, ¶ 9, 544 N.W.2d 177, 179).

[¶ 14.] Jim contends that *Foley v. Foley* is the controlling case on this issue and relies on the following language in support of his argument;

> [w]here an agreement between the parties assumes that certain events will happen and there is a failure of that assumption, our case law does not consider that failure as a change in circumstances. However, when the trial court imposes a decision upon the parties which is based on certain assumptions, the courts should be available to modify the decision so that the intended goals of the original decision are met.

429 N.W.2d 42, 46 (1988). Jim's reliance on this language for the broad proposition that stipulated agreements are not modifiable is misplaced. This language simply does not support such a proposition. Moreover, *Foley* is materially distinguishable in many ways from this case. Our holding in that case was based upon the fact that the wife's circumstances at the time of modification were "clearly different from those anticipated by the original trial court [and][t]herefore modification of [the] support award [was] warranted[.]" *Id.* Specifically, in *Foley*, the trial court's property division was intended to give the wife spousal support while at the same time increasing equity in the marital home, of which wife was awarded 70 per cent. To the extent that the trial court's decision attempted to create a better financial position for the wife through increasing the equity in the home, the decision failed. This Court noted that the fact that the original trial court's plan failed should not be held against the wife. *Id.* Since this failure was unforeseen by the court, the wife's circumstances were held to have changed. This Court's language regarding stipulated agreements is therefore dicta and as such is insufficient to overcome our consistent holdings that stipulated alimony agreements are generally modifiable.

[¶ 15.] Furthermore, *Foley* supports the proposition that the award in this case should be modifiable. In that case, we stated: "[m]odification of alimony awards is predicated on the belief that the trial court cannot foresee all circumstances which may arise after the original decree is entered." *Foley*, 429 N.W.2d at 46. Likewise, in the instant case, when the trial court accepted and incorporated the parties' stipulation into the divorce decree, neither the court, nor the parties could have foreseen the precise circumstances under which modification might be requested. Although the neurologist was unable to testify that Kathryn was unable to work because she was in fact still working, Kathryn testified she was doing so with great physical suffering and harm to her health because, in effect, she had no other means of support. This is equivalent to a finding that she was unable to work, at least in the normal sense. In addition, other testimony indicates that support is crucial for Kathryn and the parties' son. First, although she is still working three days per week, on her days off of work, Kathryn is confined to bed in an attempt to allow her body to recover from the rigors of her employment. Second, the neurologist testified that her condition will

steadily worsen and prevent her from working. Third, at the time she becomes unable to work, her disability insurance will pay for only five months, making it impossible for her to continue to support herself. Loss of the alimony payments will not only deprive Kathryn of the income to which she has become accustomed, it will likely leave her nearly destitute. This situation is precisely what alimony is intended to prevent.

**[¶ 16.] 3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING CHANGED CIRCUMSTANCES SUFFICIENT TO WARRANT MODIFICATION OF THE ALIMONY AWARD.**

[¶ 17.] Jim argues that the trial court abused its discretion in finding a change in circumstances sufficient to warrant modification. He asserts that since Kathryn's current condition was anticipated by the parties at the time of the agreement, modification is not permissible.

[¶ 18.] We have consistently held that in order to allow modification of an alimony award, the party wishing modification must show a change in circumstances from those existing at the time of the original award. *See e.g. Saxvik*, 1996 SD 18, ¶ 9, 544 N.W.2d at 179. *See also* 25-4-41. Jim argues that Kathryn has shown no change in circumstances because at the time of the award, the parties were aware that her condition would deteriorate. Relying again on *Foley*, Jim asserts that the following statement from that case controls:

> Where an agreement between the parties assumes that certain events will happen and there is a failure of that assumption, our case law does not consider that failure a change in circumstances.

*Foley*, 429 N.W.2d at 46. Jim contends that the parties anticipated that her condition would deteriorate and therefore deterioration of her condition is not sufficient grounds for modification. Jim asserts that the basis for modification is failure of the assumption by the parties that Kathryn would be unable to work in five years. First, there is no indication that the agreement assumed Kathryn would be unable to work in five years. Second, the basis for the award was not that she was still able to work, but rather that there was a change in circumstances from the time the award was initially entered.

[¶ 19.] The facts relied upon by the court to support her conclusion that there was a change in circumstances included the following:

1) Kathryn's MS has increased in severity;

2) A recent MRI shows her disease is continuing to advance and her symptoms have increased;

3) She is unable to work as much or as easily as at the time of the divorce, and she is unable to work the shifts expected of most surgical nurses;

4) Her current work schedule causes her severe fatigue which in turn causes increased symptoms including memory loss, numbness in her hands, difficulty gripping instruments and migraine headaches;

5) Since Jim has remarried and moved to Florida, she has full responsibility for their son;

6) The neurologist indicated that her prognosis was a "slow and steady decline";

7) Between her pay and child support and alimony payments, Kathryn brings in approximately $3,260.00 per month with monthly expenses of $3,500.00;

8) Jim's net income is $90,0000 per year with a monthly budget of $9,380.00 per month which includes his payments for support. His current wife also contributes to the household expenses.

Jim has failed to show that the trial court abused its discretion in modifying alimony based on these findings.

### [¶ 20.] 4. WHETHER KATHRYN'S MOTION FOR CONTINUATION OF ALIMONY WAS TIME–BARRED.

[¶ 21.] The decree ordered that alimony payments were to begin on December 15, 1996. Thus, the last payment at the end of the five years would have been on December 14, 2001. Kathryn's motion was dated January 9, 2002 and filed on January 24, 2002. Jim argues that by failing to file before the last payment was due, Kathryn's motion for modification was time-barred. The trial court held that the motion was timely because it was made within five years after the decree of divorce was filed on February 25, 1997. Jim argues that the language of the stipulated agreement plainly indicates that the five years ended on the date of the last payment. Jim's reliance on the law of contracts to determine whether this motion was time-barred is misplaced.

[¶ 22.] We have held that "the termination of an award of periodic alimony does not bring an end to the jurisdiction of the court to consider whether alimony should be reinstated at a later time if a change in circumstances is demonstrated." *Saxvik*, 1996 SD 18, ¶ 11, 544 N.W.2d at 180. As noted above, the fact that the alimony provision was based on stipulated agreement by the parties does nothing to affect the jurisdiction of the court to modify the award. There is no showing that the trial court abused its discretion in determining that the claim was timely and in

continuing the alimony provisions. The trial court is affirmed on all issues.

### [¶ 23.] 5. ATTORNEY FEES

[¶ 24.] Kathryn has made a motion for appellate attorney fees in the amount of $1,780.80 in accord with our decision in *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). Taking into account all of the factors to be considered under *Malcolm* for such an award, we determine that Kathryn is entitled to $1,200.00 in attorney fees.

[¶ 25.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and BASTIAN, Circuit Judge, concur.

[¶ 26.] BASTIAN, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.