#24347-a-DG

**2007 SD 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARY C. LOWE,                                    Plaintiff and Appellant,

  v.

KARL M. SCHWARTZ,                                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

CLARK J. BORMANN of
Bormann & Myerchin, LLP
Bismarck, North Dakota                          Attorneys for appellant.


KARL M. SCHWARTZ
Sikeston, Missouri                              Pro se appellee.


\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2007

OPINION FILED **08/08/07**

#24347

GILBERTSON, Chief Justice

[¶1.] On August 23, 2006, Karl M. Schwartz (Schwartz) filed a motion in the South Dakota Fifth Judicial Circuit for relief from the circuit court's October 17, 2005 order, compelling him to name his ex-wife, Mary C. Lowe (Lowe), as the beneficiary of and pay the premiums on a former-spouse-protection annuity related to his United States Coast Guard retirement plan. On August 28, 2006, Lowe filed a motion to amend a November 15, 2004 judgment and decree of divorce and order Schwartz to continue her beneficiary status and to increase alimony. The motions were heard on September 18, 2006, whereupon the circuit court granted Schwartz's motion while denying Lowe's. Findings of fact and conclusions of law, along with the order granting Schwartz's motion for relief were entered on November 1, 2006. We affirm.

**FACTS AND PROCEDURE**

[¶2.] Schwartz and Lowe married in August 1997. Schwartz was a thirty-eight-year-old member of the Coast Guard and Lowe was a forty-six-year-old business consultant earning a substantial income. Schwartz had relatively few assets while Lowe had accumulated a net worth of about $365,000. Schwartz retired from the Coast Guard in April 1998. Lowe was the primary income earner, although Schwartz began collecting a modest retirement from the Coast Guard. In 2000, Lowe suffered a heart attack. The two separated later that year.

[¶3.] Forced to discontinue her business consultant activities following her heart attack, Lowe essentially began living off her accumulated assets. She filed for divorce in 2003. By May 28, 2004, the date of the trial on the divorce action, Lowe's net worth had shrunk to about $80,000.

[¶4.] The circuit court's amended judgment and decree of divorce was filed on November 15, 2004. In the decree, Lowe was awarded permanent alimony of $135.00 per month from Schwartz's $1359.00 monthly Coast Guard retirement pay so that she could receive healthcare benefits under the Coast Guard's Continued Health Care Benefit Program (CHCBP).[1] Schwartz was directed to complete whatever paperwork was necessary to establish Lowe's coverage under the CHCBP while converting her from the Coast Guard's survivor-benefit plan to a former-spouse-protection plan, for healthcare only. Consistent with this provision, the decree and underlying conclusion of law No. 7 expressly set out that Lowe was not entitled to survivor-beneficiary payments through the Coast Guard's former-spouse-protection-annuity plan.[2]

[¶5.] On May 2, 2005, Lowe filed a motion to vacate the divorce decree. The circuit court denied Lowe's motion and the corresponding order was filed on June 23, 2005. Lowe appealed that order to this Court, entering notice on August 15, 2005. Pending review of that matter, Lowe filed an application to this Court for special relief seeking an order requiring Schwartz to continue Lowe's survivor-

---

1. Information was provided to the circuit court that several criteria needed to be met before a former spouse could be covered under the CHCBP. A former spouse must not remarry before age fifty-five, must have been enrolled in the Coast Guard's health care program (TRICARE) for at least eighteen months prior to divorce, receives or is court ordered to receive a portion of the retired Coast Guard member's retirement pay or is a recipient of the Coast Guard member's survivor, annuity benefit. Lowe had been enrolled in TRICARE for more than eighteen months prior to the divorce and by the September 2006 motions hearing, she had reached age fifty-five and had not remarried.

2. Rather, the decree provided that Schwartz was free to designate a beneficiary.

beneficiary status under the former-spouse-protection-annuity plan.[3] We granted Lowe's application on October 11, 2005, and remanded to the circuit court for an order continuing Lowe's status as a survivor-beneficiary. The circuit court's order was entered on October 17, 2005. On June 7, 2006, in *Lowe v. Schwartz*, 2006 SD 48, 716 NW2d 777, we affirmed the circuit court's order denying Lowe's motion to vacate the judgment of decree and divorce.

[¶6.] On August 23, 2006, Schwartz filed a motion for relief from the October 17, 2005 order on the ground that the November 15, 2004 divorce decree, setting out that Lowe was not entitled to survivor benefits, was affirmed by *Lowe*. On August 28, 2006, Lowe filed a motion to amend the divorce decree by increasing the amount of permanent alimony, on the ground there had been a change of circumstances, and to continue her status as a survivor beneficiary.

[¶7.] On September 18, 2006, the circuit court ruled from the bench denying Lowe's motion and granting Schwartz's motion for relief. The circuit court's bench ruling was incorporated into its findings of fact and conclusions of law which, along with its order, was filed on November 1, 2006.

---

3. Lowe contends, and it appears from the information provided to the circuit court in 2004, that a former spouse may continue to receive post-divorce, healthcare benefits as long as the former spouse receives a portion of the Coast Guard retiree's retirement pay *or* is a recipient of survivor benefits following the retiree's death. Since retirement payments end upon the death of a retiree, it appears that a former spouse's continued healthcare coverage is then conditioned upon the receipt of survivor beneficiary payments. Hence, the reason for Lowe's motion to vacate the divorce decree and application to this Court for special relief pending appeal of the circuit court's order denying the motion.

[¶8.]     Lowe appeals raising two issues:

1.     Whether the circuit court abused its discretion by not increasing Lowe's alimony.

2.     Whether the circuit court erred by not ordering Schwartz to continue Lowe's status as a survivor beneficiary of the Coast Guard's former-spouse-protection-annuity plan.

## STANDARD OF REVIEW

[¶9.]     A circuit court's decision regarding whether to modify an alimony award is reviewed under the abuse of discretion standard. Jamison v. Jamison, 1999 SD 129, ¶13, 600 NW2d 577, 581 (citation omitted). "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." Anderson v. Anderson, 2002 SD 154, ¶11, 655 NW2d 104, 107 (citation omitted). We review the circuit court's findings of fact under the clearly erroneous standard and conclusions of law de novo. Roth v. Roth, 1997 SD 75, ¶7, 565 NW2d 782, 784.

## ANALYSIS AND DECISION

[¶10.]     **1.     Whether the circuit court abused its discretion by not increasing Lowe's alimony.**

[¶11.]     Following a divorce decree, the circuit court may from time to time modify an award of *support* lasting for a lifetime or shorter duration, giving consideration for the parties' change in circumstances, as provided by SDCL 25-4-41. Lowe argues that a change in her and Schwartz's financial conditions since the November 15, 2004 divorce decree constitutes a change in circumstances, justifying an increase in her permanent alimony.

[¶12.]     Permanent alimony is among several types of alimony recognized in South Dakota. *See* Sanford v. Sanford, 2005 SD 34, ¶24, 694 NW2d 283, 290.[4, 5] Permanent alimony is distinguishable from other forms of alimony in that it is intended as an allowance for *support* and maintenance for such things as food, clothing, habitation and other necessaries. Fox v. Fox, 467 NW2d 762, 767 (SD 1991) (citations omitted). Necessaries may include medical or health insurance coverage. Harding-Moyer v. Harding, 2000 SD 126, ¶12, 616 NW2d 899, 902.

[¶13.]     Although the specifics of permanent alimony are determined by the facts of each case, common to it are payments until death of the recipient or other significant event, such as remarriage, which terminates the need for continuing support. *Sanford*, 2005 SD 34, ¶24, 694 NW2d at 290. We have held that circuit courts have continuing jurisdiction to modify permanent alimony as circumstances may require.[6] Saxvik v. Saxvik, 1996 SD 18, ¶11, 544 NW2d 177, 180. To justify

---

4.   In *Sanford* we summarized the various types of alimony and how they may be distinguished. 2005 SD 34, ¶24, 694 NW2d at 290. In addition to permanent alimony, we identified lump-sum alimony, restitutional or reimbursement alimony and rehabilitative alimony. *Id.* (citations omitted). We also noted that there are types of alimony subject to future modification in order to take into account unforeseen circumstances that may arise. *Id.* ¶24, 694 NW2d at 290-91 (citation omitted).

5.   Factors that are considered when assessing the need, amount and duration of alimony are: "(1) length of the marriage; (2) respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in termination of the marriage." *Sanford*, 2005 SD 34, ¶24 n4, 694 NW2d at 290 n4 (citations omitted).

6.   Our holding in *Saxvik* was limited, establishing that permanent alimony is modifiable *support* that may be reinstated, even when terminated subsequent to the decree, if dictated by a change in circumstances. 1996 SD 18, ¶¶11, 15,

(continued . . .)

modification, there must be a change of circumstances from that which existed at the time of the divorce decree. *Id.* ¶9, 544 NW2d at 179 (citations omitted). Although the change need not be substantial, mere proof of a change is insufficient to mandate modification. *Id.* ¶21, 544 NW2d at 182 (citation omitted). The party seeking modification bears the burden of proving a change of circumstances justifying modification. *Id.* ¶9, 544 NW2d at 179 (citations omitted).

[¶14.]       While Schwartz's monthly retirement pay had only changed from $1,359 to $1,452, Lowe presented evidence that his average monthly earned income had increased from between $2,200 and $2,500 at the time of the May 28, 2004 divorce trial to about $3,250 per month from January through August of 2006.[7] Lowe also presented evidence showing her own monthly income, including alimony, since the divorce trial had fallen from $317 to $264 per month. While she submitted an exhibit showing her average monthly living expenses for 2006 totaled

_____

(. . . continued)

> 544 NW2d at 180. However, we reiterated that lump-sum alimony and restitution or reimbursement alimony are not subject to modification. *Id.* ¶13, 544 NW2d at 180 (citations omitted). Our holding was likewise inapplicable "to divorce cases where the trial court [finds] no basis for an award of alimony to begin with." *Id.* ¶15, 544 NW2d at 180 (citations omitted). We withheld determination of whether rehabilitative alimony is modifiable, while suggesting that it must be considered on a case-by-case basis. *Id.* ¶14, 544 NW2d at 180.

7.   Lowe cites, as particularly supportive of her argument for increasing alimony, Schwartz's average earned income during the most recent three months preceding the September 2006 hearing. Schwartz's average earned income during that three-month period was about $5,500 per month. However, we note that the compilation from which the averages were derived shows that the monthly totals for the extraordinary three-month period range from $2,628 to $8,005 and that Schwartz's average monthly income for January and February of 2006 was $0.

about $3,800, the exhibit did not include any information as to living expenses for the balance of 2004 or 2005. Since the divorce trial, Lowe's net worth had continued to decline, falling from about $80,000 to $6,287.[8] Over the same period, Schwartz's debt had increased from $26,000 to $40,000.

[¶15.] Conclusion of law No. 6, underlying the November 15, 2004 divorce decree, states that Lowe is to receive, from Schwartz's retirement, alimony of $135 per month "so that [she] can continue her health care benefits through the [CHCBP]." *See note* 1 *supra* (*re.* CHCBP eligibility criteria). Lowe testified at trial that her CHCBP premiums remained unchanged since the divorce decree at $311 per month.

[¶16.] The foregoing evidence was essentially acknowledged in the circuit court's findings of fact from which it concluded there was an insufficient basis to grant Lowe's motion for an increase in alimony. In so deciding, the circuit court also stated in its incorporated bench ruling and in conclusion of law No. 14 that it was aware at the time of the divorce decree that because of Lowe's diminished

---

8.    Close examination of Lowe's statements of net worth, submitted as an exhibit at trial, reveals that her overall decrease in net worth since the divorce trial attributes about equally between a decrease in the value of assets and an increase in debt. At least some of the decrease in the value of assets is a consequence of depreciation and trading of vehicles. Lowe traded her 1996 Alfa Gold (divorce trial value: $28,790) and 1996 Dodge Ram 2500 (divorce trial value: $11,780) for a 2000 Winnebago 35U (motions trial value: $55,199). While this trade results in an increase to assets of about $15,000, her RV Loan Balance correspondingly increased about $17,000 to $54,331, resulting in a decrease to net worth of $2,000. Over the relevant period, her 1992 Jeep Cherokee depreciated by about $1,700. Lowe attributes an estimated $6,500 decrease in the value of a 1986 8x8 trolley to vandalism. Lowe also attributes a $2,500 tax liability to a 2005 Toyota Camry (motions hearing value: $19,825) that she won at a casino.

earnings capacity, her net worth would continue to decline unless she was able to find other means of supplementing her income.[9] The circuit court pointed out that it had taken that factor into account in determining the amount of alimony to award in the decree. *See Saxvik*, 1996 SD 18, ¶19, 544 NW2d at 182 (holding that recipient spouse's increased income, post divorce settlement, was a factor considered at the time alimony was awarded and hence could not be relied on to support payor spouse's petition to eliminate alimony when the change in recipient spouses earnings occurred); *see also* Foley v. Foley, 429 NW2d 42, 46 (SD 1988) (observing that while five "'significant and material' changes in [the recipient spouse's] circumstances" were fully anticipated by the trial court when it awarded support alimony, other changes in circumstances that justified modification of support were not anticipated). The following remarks from the bench are consistent with the circuit court's conclusion that Lowe's reduction in assets did not constitute circumstances justifying an alteration of the prior alimony award:

> At the time I awarded alimony, I knew that her assets were declining and that they were going to continue to decline, and I took that into account when I made the alimony award at that time. So there has been no change in that. It hasn't declined more rapidly than I anticipated or less rapidly.[10] It has continued to decline at the rate that I anticipated.

---

9.  The remarks of plaintiff's counsel at the divorce trial, during closing argument, summarized the evidence then presented as to the continuing decline in value of Lowe's assets: "Certainly her health is all shot. It doesn't look like very good prospects for earning income. Tax returns shown as devastating, her assets are dwindling on at a dangerously fast rate."

10. The circuit court could have concluded that Lowe's assets were declining at a significantly reduced rate following the November 15, 2004 divorce decree as compared to the rate of decline before that date. Assuming Lowe's net worth remained consistent at approximately $365,000 until her heart attack in

(continued . . .)

[¶17.]     The sole purpose the circuit court identified for granting Lowe alimony was to enable her to continue to receive healthcare benefits through the CHCBP. Evidence at the motions hearing revealed that the cost of Lowe's healthcare benefit thereunder remained unchanged since the divorce decree. *Compare with Foley*, 429 NW2d at 46 (holding, in a case where unforeseen events circumvented the alimony-awarding court's economic objectives for the recipient spouse, that "when the trial court imposes a decision upon the parties which is based upon certain assumptions, the courts should be available to modify the decision so that the intended goals of the original decision are met"). The record also evinces only slight changes to Schwartz's retirement pay and Lowe's monthly income. While Lowe avers that Schwartz has realized a substantial increase in earned income, any such increase appears to be inconsistent at best. Although Lowe's net worth has declined since the divorce trial, the record reflects that it was declining at the time of the divorce decree, that the circuit court was cognizant of that fact when it granted alimony and that it was aware that it most likely would continue to decline. Considering the foregoing, we conclude that Lowe has not met her burden to prove changes that justify increasing alimony and thus, no abuse of discretion in the circuit court's order denying the same.

---

(. . . continued)

2000, after which she discontinued her employment as a business consultant, and that her assets at that point began to decline, the rate at which her assets declined over the approximate four-year period preceding the divorce decree would be about $6,000 per month. The $74,000 reduction in assets over the 27-month period between the divorce trial and the motions hearing corresponds to a monthly reduction of about $2,750 per month.

[¶18.]     **2.     Whether the circuit court erred by not ordering Schwartz to continue Lowe's status as a survivor beneficiary of the Coast Guard's former-spouse-protection-annuity plan.**

[¶19.]     Lowe now for the second time on appeal seeks to compel Schwartz to continue her survivor-beneficiary status under the former-spouse-protection-annuity plan.  As before, Lowe argues that since entitlement to healthcare benefits under the CHCBP is conditioned on, among other requirements, receipt of Coast Guard retiree pay or survivor benefits, her healthcare benefits will cease should Schwartz predecease her.

[¶20.]     In *Lowe*, we reviewed the circuit court's denial of Lowe's motion to vacate the divorce decree that she had in part grounded on the survivor-beneficiary issue.  2006 SD 48, ¶7, 716 NW2d 777, 778-79.  Following the divorce trial, Lowe failed to submit proposed findings of fact and conclusions of law or object to those proposed by Schwartz.  *Id*. ¶16, 716 NW2d at 781-82.  Hence, Lowe's attack on the circuit court's decision as to survivor-beneficiary status was couched in a motion premised in relief under SDCL 15-6-60(b)(1)[11] that averred insufficient evidence underlying the circuit court's corresponding findings of fact and conclusions of law.  *Id*. ¶¶9, 11, 716 NW2d at 779.  The issue had been tried on the merits below.  *Id*. ¶12, 716 NW2d at 779.  We affirmed the circuit court because Lowe neglected to

---

11.     SDCL 15-6-60(b)(1) provides in pertinent part:

    On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

    (1)     Mistake, inadvertence, surprise, or excusable neglect[.]

avail herself of the opportunity to raise her sufficiency of evidence argument by objecting to the findings of fact and conclusions of law.  *Id*. ¶16, 716 NW2d at 781.

[¶21.]     Lowe's motion to amend the divorce decree in the instant case, as it pertains to the survivor beneficiary issue, is nothing more than an attempt to resurrect a matter that we have previously settled.  Therefore, there was no error in the circuit court's denial of her motion to amend as to the same, and we need give it no further consideration on appeal.

[¶22.]     Affirmed.

[¶23.]     ZINTER and MEIERHENRY, Justices, concur.

[¶24.]     SABERS and KONENKAMP, Justices, concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶25.]     I concur in Issue 2.  I dissent in Issue 1 because the trial court incorrectly denied Lowe's alimony modification request.  While the trial court may have expected Lowe's income would decrease at this rate, it does not follow that the alimony should not be modified.  Contrary to the trial court's conclusions of law, the combination of the decrease in Lowe's net worth, the increase in Schwartz's retirement pay, and the increase in Schwartz's income do justify an alteration in the prior alimony award.  Findings of Fact and Conclusions of Law 17, Lowe v. Schwartz, No. 03-81 (Walworth County Nov 1, 2006).  In this case, Lowe has demonstrated a change in circumstances and the initial alimony award should be modified.  The trial court abused its discretion when it denied the modification.

[¶26.]     The majority opinion claims that simply because the trial court expected Lowe's net worth would decline means the alimony may not be modified because there is no change in circumstances. However, Lowe need not show a substantial change of circumstances in order to justify modification. *Saxvik*, 1996 SD 18, ¶9, 544 NW2d at 179. She need only demonstrate a change in circumstances sufficient to warrant modification. *Id.* She has. Lowe met this burden and the trial court abused its discretion when it failed to modify her alimony payments.

[¶27.]     When the divorce decree was issued, Lowe had a net worth of $80,000. Her monthly income, including alimony payment, was $399, while Schwartz's monthly income was $3,559 to $3,859. She has presented evidence that her net worth is now only $6,000, while Schwartz's income has increased to $4,792. According to Lowe, Schwartz's average earned and retirement income exceeds Lowe's by *seventeen* times. Yet, the trial court refused to modify alimony because it had expected and estimated Lowe's income would decline at such a rate. Lowe is now destitute with health problems while her ex-husband lives comfortably. The circumstances demand a modification of at least $500.00 per month.

[¶28.]     Alimony is awarded after the court considers the circumstances of the parties, paying particular attention to certain factors. Fausch v. Fausch, 2005 SD 63, ¶17, 697 NW2d 748, 755. These factors are (1) length of marriage; (2) parties' respective earning capacities; 3) the parties' respective financial condition after the property division; (4) the parties' respective age, health and physical condition; (5) the parties' station in life or social standing; and (6) the relative fault of the parties in the termination of the marriage. *Id.* Here, just because the trial court expected

her net worth would decrease, it ignored these factors when awarding alimony, especially factors 2, 3, 4, and 5. Lowe earns substantially less money than Schwartz, is in poor health while Schwartz is healthy and continues to earn money, and Lowe is basically destitute while Schwartz has *seventeen times* her income.

[¶29.]     The trial court abused its discretion when it failed to modify Lowe's alimony. Even if it expected Lowe's net worth would decline, it cannot remove and insulate its decision concerning modification of alimony from appellate review. Even though the trial court expected the rate at which Lowe's assets would decline, the current financial state and change in circumstances indicate modification of alimony is warranted. We should reverse and remand Issue 1 for a fair adjustment.

[¶30.]     KONENKAMP, Justice, joins this special writing.